### SELAH v. NEW YORK TIMES.

(Supreme Court, Appellate Division, First Department. January 24, 1908.)

1. CONTRACTS—EXECUTION—EVIDENCE—SUFFICIENCY.
    Evidence *held* not to sustain a finding by the jury of the execution of a certain written contract.

2. SAME—CONSTRUCTION—AMOUNT OF COMPENSATION.
    A contract to pay plaintiff $45 per week, and $10 per week additional for every $30,000 in advertising secured by him or through his efforts, does

not entitle plaintiff to an increase of $10 per week in salary for every $30,000 of advertising done in his department, but only for every $30,000 increase over previous business.

Appeal from Trial Term.

Action by Frank A. Selah against the New York Times on an alleged contract of employment. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed, and new trial granted.

See 103 N. Y. Supp. 445.

Argued before PATTERSON, P. J., and INGRAHAM, CLARKE, HOUGHTON, and SCOTT, JJ.

Edwin C. Vogel (Leopold Wallach and Alfred A. Cook, on the brief), for appellant.

W. M. Seabury, for respondent.

CLARKE, J. The plaintiff entered into the employment of the defendant on the 12th day of November, 1900, and continued therein until the 28th day of November, 1903. He had charge of a section of the advertising department of the paper known as the "classified advertising," and seems to have successfully conducted the work intrusted to him, and to have very largely increased the amount of such advertising done by the paper. It appears that in the year prior to his employment the amount received for advertisements known in the business as classified advertising was about $34,000, while in the last year of his employment the amount of such advertising was $123,860. The plaintiff made out the pay rolls of his department, and signed receipts for the amount of weekly salary received by him, which read "in full of all demands" to and including the date expressed therein. He received $45 a week from the commencement of his services to the 27th of May, 1901. He received $55 a week from said date to December 28, 1901; $65 a week from said date to September 17, 1903; and $75 per week to the time that he severed his connection with the defendant. It is conceded by the plaintiff that he has received payment in full of all the sums entered upon the pay roll certified by him as due him for weekly salary, and for which he gave the weekly receipts as heretofore indicated. He claimed to be entitled to recover $3,880, with interest thereon, in addition to the sums received by him, upon the contract of employment claimed by him to have been made at the time he entered into the service. In support of this claim he offered in evidence the following paper writing:

"New York Times, 'All the news that's fit to print.' New York, Nov. 9, '00. The New York Times agrees to pay Frank A. Selah forty-five dollars ($45) per week and ten dollars ($10) per week additional for every thirty thousand dollars ($30,000) in advertising secured by him or through his efforts.
                                                                                "J. N."

Plaintiff testified that the body of the paper was written by him, and that the signature was written by John Norris, the business manager of the defendant, in his presence, after an interview with Mr. Ochs, the publisher of the defendant. Mr. Norris denied having signed the paper, and testified that he had never seen it until produced in the courtroom upon the trial, and Mr. Ochs denied ever having made

or authorized the alleged contract. They both testified that the plaintiff had a talk with them, and did desire a contract or an arrangement by which he would get a fixed salary and an additional amount in the shape of a percentage or a commission, provided he achieved certain results in the increase of the amount of the advertising; but that they refused to enter into such an arrangement, and that the agreement was that the plaintiff should enter into the service of the defendant at a salary of $45 per week, and that, if he was successful in materially increasing the business, he might rely upon an appreciation of his services and such increased salary as they thought his services were worth, that his services had been successful, and that appreciation thereof had been shown by successive increases of salary until the amount finally arrived at the figure of $75 per week.

There was here presented a sharp question of fact upon the terms of the employment. Upon the one side, the testimony of the plaintiff and the written memoranda claimed to have been signed by Mr. Norris with his initials; upon the other, the positive denial of the publisher and the business manager, supported by the pay rolls and the receipts. This question was resolved by the jury in favor of the plaintiff. When the extraordinary character of the contract is taken into consideration, and the fact that it was signed only by initials, and that the authority to make it and the fact of its having been made was absolutely and unequivocally denied by two witnesses, the evidence in support of the factum was required to be clear and convincing. The plaintiff became involved in a maze of contradictions as to the time when, and the circumstances under which, he alleged the paper was signed, from which he did not succeed in extricating himself. A flat denial of an important fact was met by a paper in his own handwriting, the authenticity of which he acknowledged, but of which he attempted no explanation whatever. While these matters went to his credibility and were in the first instance for the jury, yet, upon the whole case, we are not satisfied that he sustained the burden of proof by a fair preponderance of the evidence.

There is another most important question, and that is: Assuming that the written agreement is authentic, what is the correct interpretation thereof? The plaintiff claims that, starting with a salary of $45 a week, every time $30,000 of advertising in his department had been done he was entitled to an increase of $10 per week; that is to say, that, if in the first year of his emplyoment $30,000 of business was done, he would be entitled to $55 per week; that, if in the second year of his employment $30,000 of business was done, he would be entitled to $65 per week, although no more business was done in the second year than in the first. In other words, that for the mere continuance of the business at the same figure for any one period he would be entitled to the weekly increase of his salary. This seems to us to be an entirely unreasonable interpretation of the contract, and that, if the contract was entered into, it could only have meant that, whenever the business had increased to the amount of $30,000, the increase in the salary should follow. That is to say, that, if in the first period $30,000 worth of business had been done, he should be entitled to an increase

in the next period when $60,000 worth of business had been done. In other words, the promise of the increased wages depended upon increased business, and not upon a mere continuance of that which had already been achieved. He testified that, when a newspaper had a certain kind of advertising business, it was liable to continue to hold it, and he was told, which was the fact, that in the year prior to his employment there had been about $33,000 worth of classified advertisement done by the defendant. Although he testified that this was likely to continue, yet he made no allowance for this amount of business already established, but claimed for all of the classified advertising done during his employment. In the last year of his employment about $120,000 worth of business was done, and, if we take from consideration the $30,000 which belonged to the defendant at the time of his employment, it would leave $90,000 worth done during the last year, which, upon the interpretation of the contract which we think is the correct one, would have produced $75 a week salary for the plaintiff, which was the identical sum he was receiving at the time he left the defendant's employ. It was legal error, we think, for the learned court to construe the contract as claimed by the plaintiff, and to direct the jury, if they found that it had been made, to return a verdict for the sum of $3,880, with interest.

The judgment and order appealed from should therefore be reversed and a new trial granted, with costs to appellant to abide the event. All concur.